UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICO PERRY,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BRIAN HIGGINS, et al.,<br><br>　　　　　　　　Defendant. | Civil Action No. 1:23-CV-10228-WGY |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**<u>MOTION TO DISMISS</u>**

　　The Court should dismiss Plaintiff's Complaint against the two-named Defendants, federal agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Brian Higgins and Keith Medeiros. Defendants construe Plaintiff as asserting a *Bivens* claim against them for alleged interference with his medical care post-arrest. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff's *Bivens* claim fails because it arises in a new context that is "meaningfully different" from the facts in the three Supreme Court cases recognizing a *Bivens* remedy, and because "'special factors' counsel[] against extending *Bivens*" to this case. *See Quinones-Pimentel v. Cannon*, 85 F.4th 63, 69–70 (1st Cir. 2023). Plaintiff also fails to state a constitutional claim for deliberate indifference and any such claim would be subject to dismissal because it would be barred by qualified immunity.

**<u>BACKGROUND</u>**

　　On January 30, 2023, Plaintiff Perry filed a *pro se* complaint that alleged numerous claims against local, state, and federal officers in connection with his arrest on January 28, 2020. Doc. No. 1. On April 24, 2023, Plaintiff filed an amended complaint naming the same

defendants but adding additional causes of action. Doc. No. 13-1.[1] Plaintiff alleges that on January 28, 2020 he was at the Cube Smart Self-Storage facility in Boston, Massachusetts. *Id.*, ¶ 13. He claims that there was a local, state, and federal joint taskforce operation at the facility and that he was shot in the head by unknown ATF agents during his arrest. *Id.*, ¶¶ 15–16.

While at the hospital post-arrest, Plaintiff claims that Defendants Higgins and Medeiros "continuously interfered with my medical treatment." *Id.*, ¶ 18. Plaintiff asserts that Defendants Higgins and Medeiros refused to allow him to use the restroom, alleging that they "told me that I had to wait and hold my bladder until I got to Court since they had to hold their [sic] while waiting all day to lock me up." *Id.*, 20. Because he did not want to urinate in his pants, Plaintiff requested "to be discharged from the hospital so I could quickly be brought to Court in order to use the bathroom, as well as speak to an attorney and Judge to explain my need for medical treatment without interference." *Id.*, ¶ 21. Plaintiff also asserts that Defendant Higgins "claimed he was an Emergency Medical Technician (EMT) … when describing my injuries and pain levels to doctors and nurses." *Id.*, ¶ 19.

Plaintiff included seven counts in his amended Complaint, alleging violations of 42 U.S.C. § 1983 and 42 U.S.C.A. § 1985 and, but did not assert that he was seeking relief for alleged constitutional violations. *Id.* at 3-4. On August 8, 2023, the Court dismissed Perry's claims against all defendants except for Defendants Higgins and Medeiros and allowed Plaintiff's amended complaint as the operative complaint. Doc. No. 15.[2]

---

[1] Plaintiff is no longer proceeding *pro se* as attorney David M. Hass filed his appearance on February 25, 2024. Doc. No. 22.

[2] This Court denied Plaintiff's requests to file a second amended complaint and a motion for reconsideration of such denial. Doc. No. 32; Doc. No. 38 (Denying Motion for Reconsideration of Denial of Motion to Amend).

**LEGAL STANDARD**

A district court should dismiss claims under Federal Rule of Civil Procedure 12(b)(6) when the underlying allegations fail "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "The plausibility standard invites a two-step pavane." *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). "At the first step, the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012)).

"At the second step, the court must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* A district court should thus dismiss a claim "if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st Cir. 2011) (quoting *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008)).

**ARGUMENT**

Plaintiff's allegations fail to state a valid claim under Rule 12(b)(6) for multiple reasons. First, the statutory bases cited by Plaintiff do not support a cause of action against Defendants as they are federal agents, not state actors. Second, construing Plaintiff's complaint liberally as a *Bivens* action, Plaintiff's claim of interference with medical treatment fails because it arises in a new context that is meaningfully different from the facts in the three Supreme Court cases

3

recognizing a *Bivens* remedy, and because special factors counsel against extending *Bivens* to this case. And finally, Plaintiff's vague and conclusory claims, even if accepted as true, do not state a claim as to a constitutional violation and Defendants would be entitled to qualified immunity.

### A. Plaintiff's Claims under 42 U.S.C. § 1983 and 1985 are not Actionable against the Defendants.

Plaintiff purports to bring his claims under 42 U.S.C. § 1983 and 1985. Doc. No. 13-1 at 3-4. Neither statute, however, provides a cause of action against the Defendants. Section 1983 provides a cause of action against only those who have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. Put another way, Section 1983 generally "provide[s] access to a federal forum for claims of unconstitutional treatment at the hands of *state* officials." *Heck v. Humphrey*, 512 U.S. 477, 480 (1994) (emphasis added); *see also Jakuttis v. Town of Dracut*, 95 F.4th 22, 29 (1st Cir. 2024) (explaining that defendant "could be liable under § 1983 for his alleged conduct only if [defendant] were acting under color of state law at those times").

Here, Plaintiff does not claim Defendants Higgins and Medeiros were acting as state officials pursuant to state law and Section 1983 does not reach individuals who have acted "pursuant to federal law." *Chatman v. Hernandez*, 805 F.2d 453, 455 (1st Cir. 1986); *see also, e.g.*, *District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973) ("actions of the Federal Government and its officers are at least facially exempt from [Section 1983]").

Plaintiff's claim under 42 U.S.C. § 1985 fares no better. That statute, entitled Conspiracy to Interfere with Civil Rights, "has three subsections, each of which sets forth a distinct cause of action." *Donahue v. City of Bos.*, 304 F.3d 110, 122 n.9 (1st Cir. 2002). Plaintiff does not explain which subsections he seeks to pursue, but he appears to claim a violation under

4

subsection 3, which "prohibits, in general terms, conspiracies to violate civil rights." *Id.* Yet the amended complaint does not include any factual allegations to support of the existence of an agreement—let alone a conspiracy—among the named defendants. *See Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017) ("To state a claim under § 1985(3), a plaintiff must first show that the defendants conspired—that is, reached an agreement—with one another"); *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) ("a plaintiff seeking to allege such a conspiracy must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of her civil rights").

Plaintiff has therefore failed to state a claim under Section 1985. *See, e.g.*, *Parker*, 935 F.3d at 18 ("A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)"). As such, Plaintiff's amended complaint is subject to dismissal as the statutory causes of action do not apply to Defendants Higgins and Medeiros.

### B. Plaintiff's Amended Complaint, Construed as a *Bivens* Action, Fails to State a Claim.

Plaintiff's allegations also fail to state a claim insofar as he seeks to assert a claim directly under the Constitution itself. Plaintiff does not explain what constitutional right was violated by Defendants Higgins and Medeiros, instead setting forth general labels for claims of "Gross Negligence," "Excessive Force," and "Failure to Protect" all under Section 1983. Doc. No. 13-1. While Section 1983 "entitles an injured person to money damages if a state official violates his or her constitutional rights" *Abbasi*, 582 U.S. at 130, "Congress did not," by contrast, "create an analogous statute for federal officials." *Id.* That said, in *Bivens,* the Supreme Court *implied* an analogous cause of action against officials acting under color of federal law. *See Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) ("a *Bivens* action is the federal analog to suits brought against state officials under [Section 1983]"). But, even if

5

construed as a *Bivens* action, Plaintiff's amended complaint must be dismissed for failure to state a claim.

### 1. No *Bivens* Remedy Should be Implied in the New Context of Plaintiff's Claim.

The Supreme Court, through *Bivens*, has implied a cause of action against federal officials for the violation of only *three* constitutional rights.  First, in *Bivens*, the plaintiff alleged that federal agents searched his apartment without a warrant, arrested him using unreasonable force, and did so lacking probable cause.  403 U.S. at 389.  The Supreme Court, while recognizing that the Constitution "does not in so many words provide for its enforcement by an award of money damages," nonetheless implied a cause of action for damages under the Fourth Amendment.  *Id.* at 397.  Second, in *Davis v. Passman*, 442 U.S. 228 (1979), the plaintiff alleged that a federal congressman fired her based on her gender, and the Supreme Court implied a cause of action for damages under the Fifth Amendment.  Third, in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court extended *Bivens* to include an Eighth Amendment violation where federal prison officials failed to provide adequate medical treatment for an inmate's asthma, resulting in his death.

"These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."  *Abbasi*, 582 U.S. at 131.  Since these decisions, the Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"  *Id.* at 135 (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).  Moreover, "the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Indeed, the Supreme Court has not expanded *Bivens* to any new contexts in over forty years.  *Id.* at 134–35.

6

However, "the Supreme Court has never overruled *Bivens* and, most recently, clarified how courts should assess such claims." *Quinones-Pimentel*, 85 F. 4th at 69. As explained in *Abbasi*, the first consideration in evaluating any *Bivens* claim is whether the claim arises in a new context as compared to *Bivens*, *Davis,* or *Carlson*. *Abbasi*, 582 U.S. at 139. A court should ask whether "the case is different in a meaningful way" from those cases. *Id*. In *Abbasi*, the Supreme Court provided guidance as to what makes a difference 'meaningful', explaining that:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. at 139–40. A new category of defendants also suggests a meaningful difference. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). "If the case presents no meaningful differences (and thus no new context), the analysis ends there and relief under *Bivens* is available." *Quinones-Pimentel*, 85 F. 4th at 70.

If the case presents a new *Bivens* context, then the court should decline to extend *Bivens* so long as "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 582 U.S. at 136 (citing *Carlson*, 446 U.S. at 18). "The absence of any special factors means *Bivens* relief is available, while the presence of special factors means such relief is unavailable." *Quinones-Pimentel*, 85 F. 4th at 70. To summarize, as explained by the First Circuit, "the modern *Bivens* analysis involves a factual comparison with the facts of *Bivens* itself (or *Davis*, or *Carlson*, depending on the case), with an emphasis on avoiding any extension of *Bivens* to meaningfully new factual circumstances." *Id.*

Here, Plaintiff cannot assert a *Bivens* claim based on Defendants' alleged interference with his medical treatment because such claim plainly presents a different context than any previously recognized *Bivens* cases and there are sound reasons to think that Congress might be better equipped to create a damages remedy.

There are obvious legal and factual differences between this case and the *Bivens* cases that render this matter a new context for purposes of the *Bivens* analysis. For example, *Bivens* involved unlawful search and seizure claims under the Fourth Amendment; *Davis* involved an equal protection claim under the Fifth Amendment; and *Carlson* involved a deliberate indifference claim under the Eighth Amendment brought by a federal prisoner against federal prison officials due to inadequate medical treatment that resulted in the inmate's death. Plaintiff, by contrast, does not specifically assert any of those types of claims—let alone claim that Defendants Higgins and Medeiros violated his Fourth, Fifth, or Eighth Amendment rights. These distinctions show that this case presents a fundamentally different context than *Bivens*, and clearly provide reason to hesitate before extending a *Bivens* remedy to this new field.

Construing Plaintiff's amended complaint liberally, the most relevant case to the alleged facts of this matter is *Carlson*. But, the contrast between the facts of *Carlson* and the alleged facts presented by Plaintiff is vast and it is evident that this case is meaningfully different than *Carlson*. Plaintiff's allegation that the Defendants violated his constitutional rights by interfering with his medical care by purportedly refusing to allow him to use the restroom in a hospital is significantly different from the federal prison officials' deadly denial of medically critical care and treatment to a federal inmate at issue in *Carlson*.[3] In *Carlson*, an inmate's estate

---

[3] In his amended complaint (Doc. No. 13-1, ¶ 19) Plaintiff also alleges that Defendant Higgins "claimed he was an Emergency Medical Technician (EMT) with [ATF] when describing my injuries and pain levels to doctors and nurses," but does not assert that such claim was

alleged that federal prison officials failed to properly treat an inmate's medical condition which resulted in the inmate dying after having an asthma attack. *Carlson*, 446 U.S. at 16 n.1. Prison officials kept the inmate in the "facility against the advice of doctors," failed to "give him competent medical attention for some eight hours" after the asthma attack, administered antipsychotic drugs that worsened his condition, and failed to transfer him to an outside hospital. *Id*. The Supreme Court recognized that such a scenario gave rise to a *Bivens* cause of action finding that the prison officials were "deliberately indifferent to Jones's serious medical needs" in violation of the Eighth Amendment. *Id*.

The factual and legal differences between these claims are numerous and demonstrate that Plaintiff's claim arises in a new context. Plaintiff, unlike the inmate in *Carlson,* was not a federal inmate in a federal prison, he was instead an arrestee who was taken to the hospital post-arrest to determine if medical care was warranted. Plaintiff, unlike in *Carlson,* does not allege that he was suffering from a medical condition that was not properly treated. Instead, he claims Defendants refused to let him go to the bathroom. Unlike in *Carlson,* Plaintiff does not allege that he was harmed or suffered injury because of the Defendants' alleged conduct. Plaintiff's amended complaint names different types of defendants than those in *Carlson* – namely two federal agents, rather than prison officials and medical officers. Plaintiff, unlike in *Carlson,* also does not assert an Eighth Amendment claim, and as a pre-trial detainee, such claim implicates his right as a federal pretrial detainee to due process under the Fifth Amendment. *Stennis v. Armstrong*, No. 18 CV 7846, 2023 WL 1319561, at *6 (N.D. Ill. Jan. 31, 2023).

---

inaccurate or contributed to his alleged deprivation of constitutional rights. In any event, such assertion if presented in support of a *Bivens* claim, clearly arises from a different context than the facts presented in *Carlson* and therefore would not support a *Bivens* action.

9

Even if he did properly raise an Eighth Amendment claim, that would not be enough to bring his claim within the same context as *Carlson*. *Hernandez v. Mesa*, 589 U.S. 93. 103 (2020) ("A claim may arise in a new context even if it is based on the same constitutional provision as a case in which a damages remedy was previously recognized.").

At bottom, Plaintiff's factual allegations are drastically different than the facts in *Carlson*. These distinctions show that this case presents a different context than *Carlson*, and as explained by the Supreme Court and the First Circuit, a *Bivens* remedy should not be extended to a new field in such situation.

### 2. Special Factors and Alternative Remedies Counsel against Recognizing a *Bivens* Remedy to Plaintiff's Claim.

Moreover, "'special factors counsel[] hesitation' in extending *Bivens*" to the facts of this case. *See Quinones-Pimentel*, 85 F. 4th at 74 (quoting *Abbasi*, 582 U.S. at 136). "'[E]ven a single reason to pause before applying *Bivens* in a new context' is sufficient to preclude relief, because 'in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id*. (quoting *Egbert*, 596 U.S. at 486). This analysis "in most every case" should lead to the same result: "no *Bivens* action may lie." *Egbert*, 596 U.S. at 492. Here, reasons abound to "pause before applying *Bivens*" in this case. *Hernandez*, 589 U.S. at 102.

Congress already has provided a process to address allegations of misconduct by employees of the Department of Justice (which includes employees of the ATF) and thereby deter such misconduct. Through the Inspector General Act of 1978, as amended, Congress instructed the Attorney General to ensure that "any component" of the Department that receives a "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the Inspector General." 5 U.S.C. § 413(d). Congress in turn authorized the Department's Inspector General, as appropriate, to

10

"investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice," "refer such allegations to the Office of Professional Responsibility," or refer them to "the internal affairs office of the appropriate component" of the Department. *Id.* § (b)(2). *See Massaquoi v. Fed. Bureau of Investigation*, No. 22-55448, 2023 WL 5426738, at *2 (9th Cir. Aug. 23, 2023) (Finding existence of special factor because "Congress has authorized the Executive to provide an alternative remedial structure" for claim against DOJ agents, citing 5 U.S.C. § 413(b)(2)).

Accordingly, any person, including Plaintiff, may report such alleged misconduct. Indeed, the Department's Office of the Inspector General (OIG) provides a link on its public website to report allegations of wrongdoing. *See* U.S. Dep't of Justice, Office of the Inspector General, *Hotline*, oig.justice.gov/hotline (last visited 1/23/2025). Upon receiving such allegations, OIG generally either opens its own investigation or, as appropriate, refers the allegations to the Office of Professional Responsibility or the internal affairs office of the relevant Department component. Any findings by OIG regarding allegations of misconduct are then provided to the appropriate component for any remedial or disciplinary steps.

The existence of a congressionally authorized investigatory process, as implemented by the Executive Branch, is an alternative remedy counseling against this Court implying a damages remedy. *See Egbert*, 596 U.S. at 498 (holding that if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy").

Moreover, the federal government has internal processes for disciplining employee misconduct. Defendants, as Department of Justice employees "have a duty to, and shall, report . . . waste, fraud, or abuse," as well as "serious administrative misconduct" by other DOJ/ATF

employees.  28 C.F.R. § 45.11(a) & (b).  Violations can lead to "corrective or disciplinary action" by the agency.  5 C.F.R. § 2635.106.

The grievance and investigation procedures described above are, as *Egbert* underscores, reason alone to hesitate before recognizing a *Bivens* remedy.  That remains true irrespective of whether Plaintiff here ever filed a grievance, or any investigation was conducted, related to his allegations.  Indeed, *Egbert* instructs that even an allegedly "inadequate" grievance process can "independently" foreclose *Bivens* relief from a federal law enforcement officer.  *Egbert*, 596 U.S. at 497.  That is because the relevant "focus is whether the Government has put in place safeguards to preven[t] constitutional violations from recurring."  *Id*. at 498 (quotations omitted).  Here, as in *Egbert*, such safeguards plainly exist.  *See id*.

Still another alternative remedial structure provided by Congress is a statutory remedy through which the Department of Justice "may settle, for not more than $50,000 in any one case, a claim for personal injury, death, or damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer as defined in section 2680(h) of title 28 who is employed by the Department of Justice acting within the scope of employment that may not be settled under [the Federal Tort Claims Act]."  31 U.S.C. § 3724; *see Davis v. Dotson*, No. 20-13123, 2021 WL 5353099, at *2 (11th Cir. Nov. 17, 2021) (finding 31 U.S.C. § 3724 was an alternative scheme counseling against *Bivens* remedy).[4]  Through this provision, Congress has provided a statutory damages remedy for claims involving personal injury by federal law enforcement officers in the line of duty.  Accordingly, Congress created a mechanism to recover monetary compensation for certain damages arising from the category of conduct at issue here,

---

[4] 31 U.S.C. § 3723(a) is a similar provision, which applies to small claims valued at $1,000 or less.

12

and so "an alternative remedial structure" is "in place." *Egbert*, 596 U.S. at 493 (quotations omitted).

Finally, the FTCA is another "alternative remedial structure," through which "Congress already has provided" a damages remedy for torts committed by federal employees in the scope of employment. *Id.* (quotations omitted); *see* 28 U.S.C. §§ 2679, 1346.[5] Three years after *Bivens* was decided, Congress specifically amended the FTCA to allow for claims of certain intentional torts arising out of the "acts or omissions of investigative or law enforcement officers of the United States." 28 U.S.C. § 2680(h). Through the FTCA, "Congress has provided alternative remedies for aggrieved parties in [Plaintiff's] position," which is enough to "independently foreclose a *Bivens* action here." *Egbert*, 493 U.S. at 497.

As Plaintiff had access to multiple alternative processes to protect his interests, and because special factors indicate that Congress is best suited to weigh the costs and benefits of allowing a damages action such as this case to proceed, the preclusion of a new *Bivens* remedy is warranted here.

---

[5] While 42 years ago, in *Carlson*, the Supreme Court found that the FTCA did not foreclose *Bivens* relief (in a case of deliberate indifference to medical needs resulting in an inmate's death) because Congress did not "explicitly declare[] [the FTCA] to be a *substitute* for recovery directly under the Constitution and viewed as equally effective," *see Carlson v. Green*, 446 U.S. 14, 18-19 (1980) (emphasis in original), the Supreme Court clarified in *Egbert* that such reasoning "carries little weight because it predates [the Supreme Court's] current approach to implied causes of action and diverges from the prevailing framework in three important ways," *see Egbert*, 142 S. Ct. at 1808-09.

Namely, now (1) even the absence of any relief does not counsel that an implied damages remedy should be created; (2) courts should defer to Congress so long as the design of a statutory scheme "suggests that Congress has provided what it considers adequate remedial mechanisms"; and (3) the focus of the special factors inquiry is whether "there are sound reasons to think that Congress might doubt the efficacy or necessity of a damages remedy at all." *Id*. (quotations omitted).

### C. The Defendants have Qualified Immunity.

Finally, even if Plaintiff could assert a *Bivens* claim in this context, Defendants Higgins and Medeiros would be entitled to qualified immunity, which protects federal officers against suit unless their conduct violated "clearly established" constitutional rights that any reasonable person would have known of at the time of the events in question. *Wilson v. Layne*, 526 U.S. 603, 609–10 (1999). Qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted). Such immunity protects the Defendants in this case as Plaintiff fails to allege they violated clearly established constitutional rights by declining to allow Plaintiff to use the restroom at the hospital.

The qualified immunity issue entails the two-step inquiry set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), though the court is not rigidly bound to follow the two steps in sequence. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, plaintiff must show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If not, "there is no necessity for further inquiries concerning qualified immunity." *Id*. Second, if the plaintiff's allegations make out a constitutional violation, the court must consider whether the right alleged to be violated was clearly established. *Id*. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Id*.

Plaintiff does not, and cannot, claim that the Defendants' conduct violated a constitutional right. Indeed, he fails to explain what constitutional right was violated, and in what manner. While Plaintiff does not claim the Defendants acted in a deliberately indifferent manner, it is true that "[a] law enforcement officer who fails to provide adequate medical treatment to an individual injured during apprehension violates the Fifth Amendment if such

14

inattention constitutes deliberate indifference to serious medical needs." *United States v. Colburn*, 546 F. Supp. 3d 22, 27–28 (D. Mass. 2021); *Turkowitz v. Town of Provincetown*, 914 F. Supp. 2d 62, 71–72 (D. Mass. 2012) (Explaining that a state or local "police officer who fails to provide adequate medical treatment to an individual injured during apprehension violates the Fourteenth Amendment if such inattention constitutes deliberate indifference to serious medical needs.")  And as explained by this Court, "deliberate indifference may be manifested … by prison guards who intentionally delay or deny a prisoner access to medical treatment or interfere with medical treatment once it is prescribed." *Niemic v. UMass Corr. Health*, 89 F. Supp. 3d 193, 204 (D. Mass. 2015).

The sparse allegations set forth in the amended complaint, namely that the Defendants refused to allow Plaintiff to use the restroom at the hospital, thus causing Plaintiff to discharge himself from the hospital, do not contain the typical allegations found in complaints alleging failure to provide adequate medical care or treatment at the hands of a prison doctor or the denial or delay of care that might stem from prison guards conduct or omissions.  And, Plaintiff's claim, even read in the most charitable light, still fails to state a plausible deliberate indifference claim, because "not every denial or delay of medical treatment rises to the level of deliberate indifference." *Id.*  This is so, here especially, because Plaintiff does not claim that he was suffering from a serious medical condition that the Defendants were aware of, and because he does not allege that he experienced any harm due to Defendants' alleged conduct.

To demonstrate deliberate indifference in the context of interference with medical care for a pre-trial detainee, Plaintiff's allegations must satisfy both the objective and subjective prongs of the test that also governs Eighth Amendment claims based on denial or inadequate medical care. *Aaron v. City of Lowell*, 666 F. Supp. 3d 102, 133 (D. Mass. 2023).  The objective

15

prong requires a plaintiff to demonstrate proof of a serious medical need and the subjective prong mandates a showing of the defendants' deliberate indifference to that need. *Id.* (quoting *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014)).

"To make such a showing," Plaintiff would need to, "at a bare minimum," plausibly allege that Defendant Higgins and Medeiros "actually knew of a substantial risk of serious harm to [Plaintiff] and disregarded that risk." *Coyne v. Cronin*, 386 F.3d 280, 288 (1st Cir. 2004). The first prong's emphasis is on seriousness of the medical need and a showing that inadequate treatment was received for such need. *Kosilek*, at 85. The second prong requires that the pleading allege facts sufficient to demonstrate that each defendant was aware of the serious need for treatment, or of facts from which the need could be inferred, and still failed to provide it. *Id.* at 91.

Plaintiff does not allege that he was seriously injured and faced a substantial risk of serious harm and also does not allege that Defendants disregarded that risk when they purportedly declined to allow him to use the bathroom at the hospital. Rather than disregarding a substantial risk of serious harm to Plaintiff, the Defendants brought Plaintiff to the hospital post-arrest so he could be evaluated. If Plaintiff was seriously injured and needed medical care, it reasons that Plaintiff would not have voluntarily discharged himself from the hospital to use the bathroom and meet with his attorney. Similarly, if Plaintiff was seriously injured, Plaintiff would have required additional medical evaluation and treatment after he discharged himself from the hospital, but Plaintiff provides no allegation that he received such additional care.

The amended complaint lacks any factual allegations indicating that Defendant Higgins and Medeiros effectively denied Plaintiff the medical treatment or care that he required or that Defendants acted in a manner that demonstrated they had a "culpable state of mind and intended

wantonly to inflict pain." *LaFrenier v. Kinirey*, 478 F.Supp.2d 126, 140 (D.Mass.2007) (quoting *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir.1991)).

As such, Plaintiff has failed to state a constitutional claim for interference with medical care. In any event, to overcome qualified immunity, Plaintiff would have to do more than merely show that he had a constitutional right to not have his medical care interfered with, he would have to demonstrate that Defendants' alleged conduct – in declining to allow him to use the restroom – plainly violated the constitution. Plaintiff would need to cite case law sufficient to show a clearly established right that no reasonable officer could mistake. *Hunter*, 502 U.S. at 229. Based on these allegations, he cannot.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Plaintiff's amended complaint against the Defendants for failure to state a cognizable *Bivens* claim.

Respectfully submitted,

LEAH B. FOLEY
UNITED STATES ATTORNEY

Dated: February 3, 2025     By:     */s/ Mark Sauter*
                                    Mark Sauter
                                    Assistant United States Attorney
                                    United States Attorney's Office
                                    1 Courthouse Way, Suite 9200
                                    Boston, MA 02210
                                    Tel.: 617-748-3347
                                    Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: February 3, 2025     By:     */s/ Mark Sauter*
                                    Mark Sauter
                                    Assistant U.S. Attorney

17